■ In the Matter of LEROY G. ADOLPH et al., Appellants, v. DEPARTMENT OF PERSONNEL, CIVIL SERVICE COMMISSION OF THE CITY OF NEW YORK, et al., Respondents, and JOSEPH ANZALONE et al., Intervenors-Respondents.— Judgment, Supreme Court, New York County, entered on September 15, 1972, dismissing the petition in this article 78 proceeding, affirmed, without costs and without disbursements. We have affirmed in this case for the reasons given in the opinion of the trial court. Concur— Stevens, P. J., Nunez, Lane and Capozzoli, JJ.; Kupferman, J., dissents in the following memorandum: I would reverse and remand the entire matter to the commission to determine whether the examination should be voided and a new examination held for those who passed. On October 24, 1970, a promotional examination was held for District Superintendents in the New York City Department of Sanitation. Approximately 500 took the examination, which consisted of 100 multiple choice type questions. Shortly thereafter, the Department of Personnel released " proposed key answers ", and based thereon, 90 persons, including the petitioners, passed the examination. Thereafter, the Civil Service Commission created a " Test Validation Board " to review the examination. Their unanimous recommendation to the commission, which the commission adopted, was to eliminate questions 5, 28 and 32, and to grade the papers on the basis of 97 instead of 100 questions, and with respect to 14 other questions, that two of the four multiple choice answers be accepted as correct instead of the proposed key answer. The result was to have 287 passing and to change the relative standings of the petitioners. Obviously, this became a meaningless examination. While the passing grade eliminated those who could not meet the standard, to accept the final situation as a test of minute differences cannot be comprehended. As the

petitioners contend, it is doubtful whether all those who passed will be appointed before the list expires. The petitioners, nonetheless, cannot have their previous tentative standing restored, because the Test Validation Board seems correct in eliminating the three questions and allowing alternative answers to 14 other questions, although some of it was indeed farcical. An example of one of the questions eliminated, well sets forth what is here involved: "Question 5. The Department of Sanitation is continually testing new equipment under field conditions, so that it may render better service to the community. Recently several litter scooters were placed in operation. These vehicles (A) tow a two-wheel trailer with a two-wheel scooter (B) have three wheels and can travel at 50 mph (C) resemble a conventional small station wagon in appearance (D) are loaded exclusively from the rear of the vehicle." The Test Validation Board stated: "The proposed key answer for question No. 5 was 'B'. However a check with the distributor of this vehicle has shown that the newspaper article on which this question was based is incorrect. The proposed key answer says this vehicle can go at 50 mph, whereas the distributor gives a maximum speed of 40 mph. Therefore, none of the given answers is correct. It was therefore recommended that this question be deleted." The petitioners provide a photograph of a litter scooter from the *New York Daily News* of Wednesday, July 29, 1970, which has the following caption: "Sanitation employee Pat Malafronte scoops up some available curbstone garbage along Fulton St. Brooklyn, during yesterday's press demonstration of litter scooters. City has five of the three-wheel vehicles, which cost $2,900 each. They can travel 50 miles an hour, assuming there is that much distance between our dirty streets." A *Daily News* reader would, therefore, answer B, which at least proves literacy. While the *New York Daily News* is an esteemed newspaper in our community and probably the country, scholars will find it interesting to learn that it is source material for the New York City Civil Service Commission. The result, however, is to approve a system which is little better than drawing lots. The trial and error method of administering examinations cannot be condoned, and it can only produce a traumatic effect on those subjected to it. (Cf. *Griggs* v. *Duke Power Co.*, 401 U. S. 424; see, also, Employment Testing: Aftermath of Griggs v. Duke Power Company, 72 Col. L. Rev. 900, 914.) If this examination is to have any validity at all, it should be only as a means of eliminating those less qualified and not to determine relative standing.